**CITY OF ARLINGTON, Appellant,**

v.

**CITY OF FORT WORTH, Appellee.**

No. 2–93–184–CV.

Court of Appeals of Texas,
Fort Worth.

April 5, 1994.

Rehearing Overruled May 10, 1994.

James B. Barlow, Barlow & Garsek, Fort Worth, for appellant.

Robert C. Grable, Kelly, Hart & Hallman, P.C., Fort Worth, for appellee.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, City of Arlington ("Arlington") appeals from a temporary injunction which prohibits Arlington from discharging water treatment sludge into its sanitary sewer system, and from there to the Fort Worth Village Creek Waste Water Treatment Plant. In four points of error, Arlington complains that the trial court abused its discretion by issuing the temporary injunction because: (1) there was no evidence, or in the alternative, insufficient evidence, of imminent, irreparable harm to Fort Worth; (2) the relief granted by the trial court constitutes substantially all of the relief requested by Fort Worth and renders a trial on the merits meaningless; (3) the temporary injunction altered and did not preserve the status quo; and (4) Fort Worth has not shown a probable right upon which it will prevail on the merits at the time of trial.

We dissolve the temporary injunction issued by the trial court, and remand for a full trial on the merits.

The residents of Arlington get most of their drinking water from Lake Arlington. This water must be treated in Arlington's water treatment plants. After treatment, a residue consisting of 95% water and 5% inorganic chemical residue, commonly referred to as sludge, is discharged into Arlington's sanitary sewer system. This system carries all of its sewage, including sludge, domestic waste, and industrial waste, to Village Creek, a regional facility owned and operated by Fort Worth. Village Creek treats the sewage from a number of municipalities and communities. Both the City of Benbrook and Fort Worth discharge sludge from their water treatment plants into the sewage system for treatment at Village Creek. When the sewage, including sludge, is received at Village Creek, solids are removed from the sewage, dried and transported away. The water which remains after the solids are removed is further treated and then discharged into the Trinity River. Under applicable federal law, Fort Worth has the only wastewater treatment facility for the region that includes western Arlington.

On February 14, 1966, Arlington and Fort Worth entered into a contract which provided that Fort Worth would "accept the sewage from the lines of the City of Arlington into its own sewer lines and to transport and treat said sewage in the same manner as sewage from within the limits of the City of Fort Worth is transported and treated" for a term of thirty-five years (the "1966 Contract"). Since that time, Arlington has connected its sanitary sewage system to Village Creek, and sewage from the western portion of Arlington has been treated at that plant. Between 1966 and 1972, Arlington discharged its water treatment plant sludge directly into Rush Creek in Arlington because federal and state environmental laws did not require treatment of that discharge. The Federal Clean Water Act then made that practice illegal, and Arlington began to discharge its water treatment sludge into the sewer system so that it could be treated at Village Creek before re-entry into the environment. In 1971, a supplement to the 1966 Contract (the "1971 Supplement") was executed to provide rates for the treatment of sludge at Village Creek, and to enable Fort Worth to obtain grant funds for the expansion of that facility. In 1977, Fort Worth and Arlington amended the 1966 Contract to comply with certain conditions of receiving federal grant monies for Village Creek (the "1977 Amendment"). Both the 1971 Supplement and the 1977 Amendment provide for the termination of the amendment with proper notice. The termination notice period was one year under the 1971 Supplement, and two years under the 1977 Amendment. Arlington requested the increase in the notice period to allow adequate time to make other arrangements to handle the sludge. A further amendment was executed in 1984 to further revise rates charged for sludge and other wastewater (the "1984 Amendment").

Over the past decade, the cities of Arlington and Fort Worth have been involved in continuing disputes over the fee structure of Fort Worth's treatment services. In 1984, Fort Worth sought to revise its sewage treatment contract with Arlington. Those negotiations broke down, and in December 1988 Fort Worth notified Arlington that it would not continue to provide sewage treatment

past the expiration of the contract in the year 2001. Arlington responded by filing suit in 1989 for a declaratory judgment that Fort Worth would be required to continue sewage treatment. The trial court granted summary judgment for Fort Worth in that action, and this court affirmed, holding that Fort Worth has the inherent authority to terminate extraterritorial wastewater treatment services under the police powers doctrine. *City of Arlington v. City of Fort Worth*, 844 S.W.2d 875, 877 (Tex.App.—Fort Worth 1992, writ denied). In May of 1990, Fort Worth gave Arlington notice of its intent to terminate the 1977 Amendment in May of 1992. Arlington continued to deposit the water treatment sludge into the sewer lines during this period, and to report the quantity and quality of such sludge to Fort Worth. Fort Worth continued to prepare a separate billing for sludge treatment until May 1992, when Arlington ceased to report its sludge transmission. In October 1992, Fort Worth discovered that Arlington was continuing to deposit water treatment plant sludge into the sewer system. In June 1993, Fort Worth filed suit to enjoin the continuing trespass by Arlington, and to recover damages for the treatment services that Fort Worth has unwillingly provided without payment. The trial court issued a temporary injunction enjoining Arlington from placing water treatment plant sludge into the Fort Worth sewer system.

 The issuance of a writ of injunction is an extraordinary equitable remedy, and its use should be carefully regulated. *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *Raine v. Searles*, 302 S.W.2d 486, 487 (Tex.Civ.App.—El Paso 1957, no writ). The only question before the trial court at the hearing for a temporary injunction is whether the applicant is entitled to the preservation of the status quo pending a trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993) (per curiam). The applicant must plead a cause of action, prove a probable right and that a probable injury will be sustained during the pendency of the trial if the temporary injunction is not issued. *Camp*, 348 S.W.2d at 519; *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). It is an abuse of discretion for a trial court to

grant a temporary injunction unless it is clearly established that the applicant is threatened with an actual irreparable injury if the injunction is not granted. *Mother & Unborn Baby Care of North Texas, Inc. v. Doe*, 689 S.W.2d 336, 338 (Tex.App.—Fort Worth 1985, writ dism'd).

The decision to grant or deny a temporary injunction is properly left to the sound discretion of the trial court. Appellate review of a trial court's order granting or denying an temporary injunction is limited to a determination of whether there has been a clear abuse of discretion by the trial court. *Walling*, 863 S.W.2d at 58; *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978); *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460, 462 (1952). If conflicting evidence is presented, the appellate court must conclude that the trial court did not abuse its discretion in entering its order. *Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex. App.—Houston [1st Dist.] 1992, no writ).

 In their third point of error, Arlington complains that the trial court abused its discretion by issuing a temporary injunction because the temporary injunction altered and did not preserve the status quo. Generally, the status quo to be preserved by a temporary injunction is the last, actual, peaceable, noncontested status which preceded the suit. *Texas Aeronautics Comm. v. Betts*, 469 S.W.2d 394, 398 (Tex.1971) (orig. proceeding); *Transport Co. of Texas*, 261 S.W.2d at 553–54; *Scott v. Rheudasil*, 614 S.W.2d 626, 630 (Tex.Civ.App.—Fort Worth 1981, no writ). However, the status quo cannot be a violation of the law. *DeNoie v. Board of Regents*, 609 S.W.2d 601, 603 (Tex.Civ.App.—Austin 1980, no writ); *Rattikin Title Co. v. Grievance Committee of State Bar of Texas*, 272 S.W.2d 948, 955 (Tex.Civ.App.—Fort Worth 1954, no writ). Here, the last uncontested status quo existed just prior to the alleged termination of the 1977 amendment. That amendment, if still in force, would allow the continued discharge of water treatment sludge into Fort Worth's sewer system. Fort Worth argues that this status quo is now illegal, given the termination of the 1977

amendment. That determination, however, is the central question of the suit, and should be determined with a full trial on the merits. We hold that the position of the parties just prior to the alleged termination of the 1977 Amendment in May 1992 is the last peaceable uncontested status between these parties that must be preserved by the temporary injunction, if the injunction is otherwise proper. Point of error three is sustained.

■ In its first point of error, Arlington asserts that the trial court abused its discretion by issuing the temporary injunction because there was no evidence, or in the alternative, insufficient evidence, of imminent, irreparable harm to Fort Worth. The harms alleged by Fort Worth include: (1) failure to pay for sludge treatment provided by Fort Worth; (2) injury of Fort Worth's borrowing capacity; and (3) continuing trespass. Arlington's failure to pay for sludge treatment is not an irreparable harm, since it may be compensated with monetary damages. The trial court rejected Fort Worth's contention that its borrowing power might be inhibited if someone determined that Arlington's use of Fort Worth's sewer system over its protest and legal resistance was a violation of Fort Worth's bond covenants, stating that the possibility was too contingent and remote. We agree with that assessment. This leaves Fort Worth's continuing trespass claim. The record contains scant evidence that any harm, other than nonpayment of services rendered, was suffered as a result of the transmission of water treatment plant sludge. Fort Worth in its brief does not argue actual, irreparable harm.

It is not disputed that Arlington has the right to transmit to Fort Worth sewage for treatment under the 1966 contract. It is also undisputed that this sewage constitutes 99.-995 percent of the total flow of material from Arlington to Fort Worth. The remaining 0.005 percent of the flow is the disputed sludge, an amount too minute to be measured by the meters utilized by Fort Worth. The Village Creek plant sends 70 percent of its sludge intake to an outside contractor, with the remaining 30 percent treated in the plant and dried in the plant's own drying beds. The Arlington sludge constitutes 4 percent of the sewerage treatment plant's daily sludge capacity, or 1.2 percent of the plant's total sludge intake. There was testimony that the Village Creek plant's sludge drying beds were slowly filling up, because the wet weather conditions during the previous several years had delayed the drying and removal of the accumulating sludge. However, there was no evidence that the beds were in danger of becoming full during the pendency of the suit. Thus, there was no evidence that the continuing transmission created any risk of immediate, irreparable harm.

■ Fort Worth instead argues that the continuing transmission of water treatment plant sludge after the expiration of the contract allowing that transmission constitutes a continuing trespass that may be enjoined even without a showing of irreparable injury. A trespass can be either by entry of a person upon another's land, or by causing or permitting a thing to cross the boundary of the premises. *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 416 (1961); *Glade v. Dietert*, 156 Tex. 382, 295 S.W.2d 642, 645 (1956). A trespass may be committed on, beneath, or above the surface of the earth. *Gregg*, 344 S.W.2d at 412 (finding injection of sand and liquid into an existing well, causing subsurface flow onto property a trespass); *Langford v. Kraft*, 498 S.W.2d 42, 51 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.) (finding increased flow of surface water drainage a trespass); RESTATEMENT (SECOND) OF TORTS § 159 (1965). Where a trespass invades the possession of one's land, or destroys the use and enjoyment of that land, an injunction is a proper remedy. *Cargill v. Buie*, 343 S.W.2d 746, 749 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.). Also, injunction is the proper remedy to restrain repeated or continuing trespasses where the remedy at law is inadequate because of the nature of the injury, or the multiplicity of actions necessary to obtain redress. *MGJ Corp. v. City of Houston*, 544 S.W.2d 171, 175 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (opinion on reh'g); *Boiles v. City of Abilene*, 276 S.W.2d 922, 925 (Tex.Civ.App.—Eastland 1955, writ ref'd).

We do not dispute Fort Worth's probable right to cancel the 1977 Amendment, and to seek a permanent injunction to enforce that contract cancellation, though our holding does not reach those issues. We do question the propriety of issuing a temporary injunction with no showing of imminent, irreparable harm, supported only by a contract breach clothed as a continuing trespass, and fully compensable with monetary damages. In this case the nature of the injury during the pendency of the suit is not irreparable, because the increased flow of sludge may simply be handled by an outside contractor, or if processed by Fort Worth at the plant, the increased volume of dried sludge can simply be removed. In either case, Fort Worth can be fully compensated by monetary damages. Fort Worth's use and enjoyment of its Village Creek Sewage Treatment Plant has not been harmed in any measurable way, and it certainly has not been dispossessed of its property. Only this one suit, seeking permanent injunction, declaratory judgment, monetary damages, and attorney's fees, is necessary to make Fort Worth whole and resolve the dispute. We hold the trial court abused its discretion by issuing a temporary injunction because there was no showing of imminent, irreparable harm, or that the remedy at law was inadequate. Point of error one is sustained.

Because of our holding in points of error one and three, consideration of Arlington's other points of error is unnecessary.

The temporary injunction in favor of Fort Worth is dissolved, and the case remanded to the trial court for a full trial on the merits.