COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| DENVER EHLER and MARY EHLER, | | No. 08-07-00254-CV |
| | § | |
| Appellants, | | Appeal from |
| | § | |
| v. | | 327th District Court |
| | § | |
| LVDVD, L.C., DESERT VIEW DAIRY, | | of El Paso County, Texas |
| L.C., TONY BOS, Individually and as a | § | |
| Partner in MJB DAIRY, and doing | | (TC # 2007-2733) |
| business as MJB DAIRY, and also doing | § | |
| business as RIO GRANDE VALLEY | | |
| DAIRY, and BRADLEY BOUMA, | § | |
| Individually and as a partner in MJB | | |
| DAIRY and doing business as MJB | § | |
| DAIRY, and also doing business as | | |
| RIO GRANDE VALLEY DAIRY, | § | |
| | | |
| Appellees. | § | |

## O P I N I O N

Denver Ehler and Mary Ehler appeal from a summary judgment granted in favor of LVDVD, L.C., Desert View Dairy, L.C., Tony Bos, individually and as a partner in MJB Dairy, and Bradley Bouma, individually and as a partner in MJB Dairy, and doing business as MJB Dairy, and also doing business as Rio Grande Valley Dairy. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

The Ehlers own real property adjacent to a dairy in El Paso County, Texas. In 2003, they filed suit against Appellees alleging nuisance, trespass, and violation of Section 11.086 of the Texas Water Code. The Ehlers alleged that in 2002 and 2003 rain water washed manure from the dairy onto their property. Appellees filed both no evidence and traditional motions for summary judgment.

The motions for traditional summary judgment are based, in part, on the statute of repose found in Section 251.004 of the Texas Agricultural Code. Ten days before the summary judgment hearing, the Ehlers amended their petition to add allegations based on flooding incidents which occurred in 2004 and 2006, but the allegations related to 2002 and 2003 are identical to the prior pleadings. The trial court granted summary judgment as to the 2002 and 2003 incidents, but expressly ruled that the judgment did not address the causes of action based on the 2004 and 2006 incidents. The trial court did not specify on which ground or grounds she based the judgment. The partial summary judgment was severed from the remaining claims in order that the summary judgment would be final and could be appealed.

## THE THIRD AMENDED PETITION

Although not presented as a separate issue, the Ehlers assert in their brief that the trial court erred in granting summary judgment because the motions for summary judgment were "directed to the Plaintiffs' 1st Amended Original Petition" when it was no longer the live pleading at the time of the hearing. A party may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *See Chessher v. Southwestern Bell Telephone Company*, 658 S.W.2d 563, 564 (Tex. 1983); *Espeche v. Ritzell*, 123 S.W.3d 657, 663 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). A plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case regarding theories of recovery. TEX.R.CIV.P. 65; *J.M. Huber Corporation v. Santa Fe Energy Resources, Inc.*, 871 S.W.2d 842, 844 (Tex.App.--Houston [14th Dist.] 1994, writ denied). In such a case, a party moving for summary judgment is required to amend or supplement its motion for summary judgment to address the additional claims unless the summary judgment motion is sufficiently broad to encompass the later-filed claims. *See Espeche*, 123 S.W.3d at 663-64. Appellees did not amend their motions for

summary judgment, but the trial court did not grant summary judgment as to the new claims added by the third amended petition. Thus, the summary judgment does not violate *Chessher*. Given that the pleadings and claims related to the 2002 and 2003 incidents stated in the third amended petition are identical to the pleadings and claims raised in the first amended petition, we conclude that the summary judgment motions are sufficiently broad to encompass those claims and Appellees were not granted more relief than requested.

## STATUTE OF REPOSE

In Issue One, the Ehlers allege that the trial court erred in granting summary judgment based on the statute of repose affirmative defense because Appellees failed to establish their entitlement to summary judgment. The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Duran*, 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso

2006, pet. denied). When the trial court's judgment does not specify the ground, or grounds, upon which it relied for its ruling, the judgment must be affirmed if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Fertic v. Spencer*, 247 S.W.3d 242, 249 (Tex.App.--El Paso 2007, pet. denied).

Appellees moved for summary judgment based on the statute of repose found in Section 251.004(a) of the Texas Agriculture Code. It provides that no nuisance action may be brought against an agricultural operation that has lawfully been in operation for one year or more prior to the date on which the action is brought, if the conditions or circumstances complained of as constituting the basis of the nuisance action have existed substantially unchanged since the established date of operation. TEX.AGRIC.CODE ANN. § 251.004(a)(Vernon 2004). Section 251.004(a) applies on proof of two conditions: (1) the agricultural operation was in business lawfully for more than a year before the nuisance action was filed; and (2) the conditions and circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation. *Holubec v. Brandenberger*, 111 S.W.3d 32, 38 (Tex. 2003); *see Aguilar v. Trujillo*, 162 S.W.3d 839, 852 (Tex.App.--El Paso 2005, pet. denied)(discussing Section 251.004). A statute of repose operates as an affirmative defense. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). Appellees had the burden to conclusively prove each essential element of that defense. *Id*. The burden would shift to the Ehlers to raise a fact issue precluding summary judgment only if Appellees carried their burden.

The Ehlers argue that Appellees failed to provide summary judgment evidence showing the established date of any agricultural operation. Section 251.003 of the Agriculture Code provides:

> For purposes of this chapter, the established date of operation is the date on which an agricultural operation commenced operation. If the physical facilities of the agricultural operation are subsequently expanded, the established date of operation

for each expansion is a separate and independent established date of operation established as of the date of commencement of the expanded operation, and the commencement of expanded operation does not divest the agricultural operation of a previously established date of operation.

TEX.AGRIC.CODE ANN. § 251.003. In *Aguilar*, we rejected an argument that a defendant relying on Section 251.004(a) must prove the exact date on which it first commenced agricultural operation. *Aguilar*, 162 S.W.3d at 854-55. We adhere to that holding. When Sections 251.003 and 251.004(a) are read together, the critical inquiry is whether the defendant commenced the operations on which the plaintiff bases his nuisance action more than one year before the plaintiff filed suit. *See id.*

The Ehlers alleged that waste from the dairy was transported onto their property after it rained on August 12, 2002 and again on July 17, 2003. They filed their petition on August 8, 2003. To rely on the statute of repose, Appellees were required to prove that the agricultural operation had lawfully been in operation for one year or more prior to August 8, 2003. To prove this element, Appellees relied on the affidavit of their expert witness, Eduardo A. Latimer, Ph.D., who reviewed written materials and a videotape, and conducted a physical inspection of the property as part of his report. In his facility inspection report dated August 1, 2005 and attached to the affidavit, Dr. Latimer related that facility records made available by MJB Dairy showed it obtained a no-discharge permit from the Texas Water Commission to dispose of wastes associated with the dairy operation on August 9, 1988. The report further states that the records showed the dairy maintained the same permit number and permit requirements/conditions throughout its operation of "roughly 15 years." The operational facilities of the dairy farm, as described in the facility's water quality permit, consisted of solids settling basins and about 50 acre-feet of holding ponds for treatment and/or storage of process-generated waste and wastewater, as well as rainfall and rainfall runoff. Dr. Latimer conducted a physical inspection of the premises on May 23, 2005. His report states that the

dairy facility was in the process of closure[1] when he visited on that date, but as of July 17, 2003, the facility was fully operational and properly permitted by TNRCC[2] with over 100 acres of agricultural operation and production with nearly 1,000 mature milking cows. Dr. Latimer inspected the waste containment system and noted it showed long-term use with no signs of breach or erosion. He noted that historical facility records indicated the dairy was in compliance with all regulatory requirements, and TCEQ found no violations following a comprehensive compliance investigation of the dairy on November 21, 2003. From this, Dr. Latimer concluded that the dairy facility had been properly operating under the terms and conditions of the permit, including proper reporting and record keeping. This evidence is sufficient to establish that the dairy facility had been in lawful operation since approximately 1988, the waste containment system had been in place during this time period, and the conditions on which the Ehlers based their nuisance action had existed unchanged for more than one year before they filed suit on August 8, 2003. Therefore, Appellees conclusively established the elements of their affirmative defense as it relates to their nuisance cause of action. We overrule Issue One.

## TRESPASS

In Issue Two, the Ehlers contend that the trial court erred in granting summary judgment because the statute of repose affirmative defense does not apply to their trespass cause of action. Relying on Section 251.004(a)'s language, "No *nuisance action* may be brought against an agricultural operation . . . ," the Ehlers argue that the statute of repose is limited to nuisance actions. [Emphasis added]. TEX.AGRIC.CODE ANN. § 251.004(a). Appellees reply that the Ehlers should not

---

[1] The report reflects that the dairy was being closed and sold as part of a USDA program to eliminate bovine tuberculosis in the area by creating a buffer zone between cattle in Texas and cattle in Ciudad Juarez.

[2] The Texas Natural Resource Conservation is now the Texas Commission on Environmental Quality.

be permitted to avoid the application of Section 251.004(a) through artful pleading because such a construction of the statute would be contrary to the statute's intended purpose of protecting established agricultural operations.

In their pleadings, the Ehlers alleged that it rained in El Paso County on August 12, 2002 and waste from the dairy and water that was to be contained in the retention ponds was transported from the dairy's property to the Ehlers' property. The same events occurred on July 17, 2003 after a rain. The pleadings then allege that the Ehlers "will show the Court the act(s) of the dairy was and is a nuisance and/or trespass of their property for the August 12, 2002 acts and the July 17, 2003 acts." According to the pleadings, each of these events caused temporary injury to the Ehlers' real property and caused them to vacate the premises.

The Right to Farm Act does not define "nuisance action." In the absence of any special meaning, we must give the phrase its ordinary meaning. TEX.GOV'T CODE ANN. 312.002(a)(Vernon 2005)(stating that "words shall be given their ordinary meaning" except when "a word is connected with and used with reference to a particular trade or subject matter or is used as a word of art"); *see Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009). Blackstone broadly defined nuisance as "[a]nything that worketh hurt, inconvenience or damage, or which is done to the hurt of the lands, tenements or hereditaments of another." William L. Prosser, *Nuisance Without Fault*, 20 Tex.L.Rev. 399, 410 (1942), *quoting* Blackstone's definition while noting it is broad enough to cover all conceivable torts. Since the mid-19th century, Texas courts have occasionally utilized that definition. *Burditt v. Swenson*, 17 Tex. 489 (1856); *Brewster v. City of Forney*, 223 S.W. 175 (Tex.Comm.App. 1920). In the modern era, Texas courts have continued to broadly define the term. *See e.g., City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997)("Nuisance, whether it be public or private, is thus a field of tort liability, a kind of damage done, rather than any particular type of

conduct."); *Wales Trucking Company v. Stallcup*, 474 S.W.2d 184, 186 (Tex. 1971)("There is a general agreement that [nuisance] is incapable of any exact or comprehensive definition, and we shall attempt none here.").

In *Aguilar*, this Court stated that nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use or enjoy it. *Aguilar*, 162 S.W.3d at 850, *citing Holubec v. Brandenberger*, 111 S.W.3d 32, 36 (Tex. 2003). A nuisance may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction, (2) physical harm to a person on his property from an assault on his senses or by other personal injury, and (3) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind. *Aguilar*, 162 S.W.3d at 850. For an actionable nuisance, a defendant must generally engage in one of three kinds of activity: (1) intentional invasion of another's interests; (2) negligent invasion of another's interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *Aguilar*, 162 S.W.3d at 850-51; *Z.A.O., Inc. f/k/a Bell Thunderbird Oil Co., Inc. v. Yarbrough Drive Center Joint Venture*, 50 S.W.3d 531, 532 (Tex.App.--El Paso 2001, no pet.). The Ehlers' petition states a nuisance action for the alleged physical harm of their property by the encroachment of a damaging substance, namely, waste from the dairy.

Every unauthorized entry is a trespass even if no damage is done. *Aguilar*, 162 S.W.3d at 851, *citing Trinity Universal Insurance Company v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997). A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. *Aguilar*, 162 S.W.3d at 851; *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex.App.--Fort Worth 1994, writ dism'd w.o.j.). Finally, a trespass

may be committed on, beneath, or above the surface of the earth. *Aguilar*, 162 S.W.3d at 851; *City of Arlington*, 873 S.W.2d at 769. The Ehlers rely on the same event, the alleged encroachment of waste from the dairy, to prove both trespass and nuisance. Likewise, they allege the same damages, namely, temporary physical harm to their property. Giving "nuisance action" its ordinary meaning, we conclude that a trespass action is included in the phrase "nuisance action" as used in Section 251.004(a).

Further, our construction of Section 251.004(a) promotes the stated purpose of the statute. The Legislature passed the Right to Farm Act in 1981 in order "to conserve, protect, and encourage the development and improvement of [Texas] agricultural land for the production of food and other agricultural products" by "limiting the circumstances under which agricultural operations may be regulated or considered to be a nuisance." TEX.AGRIC.CODE ANN. § 251.001; *Aguilar*, 162 S.W.3d at 852. Permitting the Ehlers' to avoid the application of Section 251.004(a) by pleading a nuisance action as a trespass would eviscerate the statute and deny Appellees the protection intended by the Legislature when it passed the Right to Farm Act. We decline to give the statute such a construction. Issue Two is overruled.

## STATE LAW VIOLATIONS

In Issue Three, the Ehlers maintain the trial court erred by granting summary judgment on their claim based on alleged violations of state law because Appellees offered no evidence establishing that the water diverted onto the Ehler property is surface water. The Ehlers made the following allegations in their third amended petition:

> The EHLERS will show the Court that Defendants constructed berms and/or dams on various arroyos on the diary [sic] property. The purpose of the berms and/or dams was to divert the flow of water that would run down the arroyos from traveling onto the dairy property. The method of constructing the berms and/or dams diverted the water from its regular flow. After rainstorms the water in the arroyo, rather than

traveling in a rout [sic] that would allow for disbursement on the dairy property, travels down the arroyo and inundates the property located to the west of the dairy property. The diversion causes the EHLERS property and their neighbors property to be inundated with agricultural waste, dirt, and debris. The EHLERS will show the Court the acts of Defendants in constructing the berms and/or dams is in violation of Texas law and that such violations allow recovery by the EHLERS from Defendants, joint and several, in the amount of damages to their real property and personal property.

The Ehlers do not identify in their pleadings which statute Appellees are alleged to have violated. Appellees moved for summary judgment on this claim asserting that the only statute remotely applicable to this claim is Section 11.086 of the Texas Water Code and that the Ehlers' pleadings negate a cause of action based on Section 11.086. In their response, the Ehlers addressed whether Appellees were entitled to summary judgment on this ground and did not dispute that their violation of state law claim is based solely on Section 11.086. Section 11.086 provides:

(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

TEX.WATER CODE ANN. § 11.086 (Vernon 2008).

Generally, pleadings are not evidence which will support summary judgment. *Lyons v. Lindsey Morden Claims Management, Inc.*, 985 S.W.2d 86, 92 (Tex.App.--El Paso 1998, no pet.), *citing City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). If a party's pleadings contain judicial admissions negating a cause of action, however, summary judgment may be granted on the basis of the pleadings. *Lyons*, 985 S.W.2d at 92. Judicial admissions are assertions of fact, not pleaded in the alternative, in the live pleadings of a party. *Id.*

The term "surface water," as used in Section 11.086, is not defined in the Water Code, but

it is a term of art when used in the context of riparian rights. *Dietrich v. Goodman*, 123 S.W.3d 413, 418 (Tex.App.--Houston [14th Dist.] 2003, no pet.). It means water "which is diffused over the ground from falling rains or melting snows, and [it] continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Texas Woman's University v. The Methodist Hospital*, 221 S.W.3d 267, 277 (Tex.App.--Houston [1st Dist.] 2006, no pet.), *quoting Dietrich*, 123 S.W.3d at 417; *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538-39 (Tex.App.--Dallas 1992, writ denied); *City of Princeton v. Abbott*, 792 S.W.2d 161, 163 (Tex.App.--Dallas 1990, writ denied); *see also Raburn v. KJI Bluechip Investments*, 50 S.W.3d 699, 704 (Tex.App.--Fort Worth 2001, no pet.)(defining surface water as "water or natural precipitation diffused over the surface of the ground *until* it either evaporates, is absorbed by the land, or reaches a bed or channel in which water is accustomed to flowing" [emphasis in original]). Texas courts have further held that surface water is never found in a natural watercourse having (1) a bank and bed, (2) a current of water, and (3) a permanent source of supply. *Texas Woman's University*, 221 S.W.3d at 277; *Dietrich*, 123 S.W.3d at 418, *citing Hoefs v. Short*, 114 Tex. 501, 273 S.W. 785, 787 (1925). Although the source of a watercourse must be permanent, such as a watershed, it need not be continuous, and a watercourse may be dry for long periods of time. *Texas Woman's University*, 221 S.W.3d at 277; *Dietrich*, 123 S.W.3d at 418, *quoting Hoefs v. Short*, 114 Tex. 501, 273 S.W. 785, 787 (1925).

The Ehlers alleged that Appellees diverted the rainwater flowing in the arroyos onto the Ehlers' property. An arroyo is a small steep-sided watercourse or gulch with a nearly flat floor, and is usually dry except after heavy rains. WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 117 (2003). Rainwater which has flowed into and through an arroyo, a watercourse, is not surface water as that term is used in Section 11.086. By pleading that Appellees diverted water flowing in the arroyos onto the Ehlers' property, the Ehlers judicially admitted that the water is not surface water.

Consequently, the Ehlers cannot maintain a cause of action under Section 11.086(b).  The trial court did not err by granting Appellees' motion for summary judgment on this ground.  Issue Three is overruled.  Given our resolution of the first three issues, it is unnecessary to review Issue Four which addresses the no-evidence summary judgment motion.  We affirm the judgment of the trial court.


March 17, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Guaderrama, Judge
Guaderrama, Judge, sitting by assignment