# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-22-00418-CV
---

**Albert Adcock, Appellant**

**v.**

**Cal-Maine Foods, Inc., Appellee**

---
### FROM THE 155TH DISTRICT COURT OF FAYETTE COUNTY
### NO. 2019V-100, THE HONORABLE JEFF R. STEINHAUSER, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

Albert Adcock sued Cal-Maine Foods, Inc. for trespass and nuisance, complaining of alleged intrusion of odors, dust, and runoff onto his property. The trial court denied Adcock's motion for partial summary judgment and granted Cal-Maine's motion for summary judgment. The trial court's summary-judgment orders became final when they merged with the trial court's subsequent order granting Cal-Maine's motion to dismiss its claim for attorney's fees. For the following reasons, we reverse the trial court's summary judgment, affirm its order denying Adcock's motion for partial summary judgment, and remand this cause for further proceedings.

### BACKGROUND

Cal-Maine operates a chicken-feed mill on property adjacent to Adcock's. On April 29, 2019, Adcock sued Cal-Maine, asserting claims of nuisance and trespass and

complaining of the company's "torment" of him and other residents since it acquired the mill from its previous owner about fifteen years prior. Specifically, Adcock complained about Cal-Maine's alleged release of "putrid odor[s] of animal waste and chemicals" and a "noxious dust-like chemical [that] saturate[s] the air and settle[s] on everything in the vicinity"; making "loud noises at all hours of the day and night"; and "causing disgusting, putrid sludge and liquid runoffs to enter onto his" land. He alleged that before Cal-Maine took over the mill, he "had a lush backyard with beautiful green grass" and "enjoyed spending time outdoors where he could relax under the cool, fresh air" but that the "sludge and runoff" from Cal-Maine's operations caused his backyard "to gradually transform from a lush green yard to a desolate, weed-infested swamp on which [he] dare not traverse anymore."

On May 21, 2019, Adcock amended his petition to include a new factual allegation: "On or about January 2019, Cal-Maine appeared to have made changes in its practices that served only to racket [sic] up its abuses to an unprecedented level. For example, Cal-Maine constructed a new concrete structure that exacerbated the problem to a level not previously experienced by [Adcock]." He attached a picture to his amended petition depicting a concrete curb abutted with murky water. The sludge and runoff had "worsened recently," he believed, due to "new activity [at the plant] that caused increased [dust-like] deposits on the top of [Cal-Maine's] facility" and required its constant washing-off of the deposits. Adcock amended his petition twice thereafter, and his live petition (third amended) provides further detail as to the nature and extent of the alleged harm from the runoff: The "new concrete pavement and curb . . . diverted water/liquid runoff that previously entered . . . Adcock's property at a particular area to another area of . . . Adcock's property. The new structure and the new entry point of the water have caused new problems for . . . Adcock, such as damage to the

2

foundation of his home and loss of his trees." In his live petition, Adcock no longer complains about the alleged dust and odors emanating from Cal-Maine but only about the alleged runoff and "very loud truck noises" at "very early hours in the morning," which he alleges began around the time that the concrete pavement and curb were installed.

Adcock filed a motion for partial summary judgment as to his trespass claim only, and Cal-Maine filed a motion for summary judgment as to both Adcock's trespass and nuisance claims.[1] Adcock attached to his motion the following evidence: his affidavit, a photograph depicting the alleged curb and a large quantity of "water and sludge" abutting one side and a small quantity abutting the other, and a Google Maps aerial photograph depicting the two adjacent properties. Cal-Maine attached to its motion the following evidence: the affidavit of Jeremy Emerson, Cal-Maine's Director of Feed Mill Operations, to which were attached two letters from the Texas Commission on Environmental Quality, and Adcock's deposition testimony.[2] The trial court sustained Cal-Maine's objections to Adcock's summary-judgment evidence, denied Adcock's motion for partial summary judgment, and granted Cal-Maine's motion for summary judgment. Cal-Maine later dismissed its remaining claim for attorney's fees. Adcock perfected this appeal.

---

[1] Cal-Maine's motion for summary judgment attached and referenced evidence and made arguments concerning only the alleged runoff intrusion, not the alleged loud truck noises.

[2] Cal-Maine also attached Adcock's original and three amended petitions, but those are not evidence. *See, e.g.*, *Connor v. Hill Country Animal Hosp.*, No. 03-19-00090-CV, 2019 WL 5251142, at *2 n.2 (Tex. App.—Austin Oct. 17, 2019, no pet.) (mem. op.) (noting that pleadings do not generally constitute summary-judgment evidence).

**DISCUSSION**

In two issues, Adcock complains that the trial court erred in (1) sustaining Cal-Maine's objections to his summary-judgment evidence and denying his motion for partial summary judgment and (2) granting Cal-Maine's motion for summary judgment as to the alleged runoff onto his land. We review summary judgments de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). A party moving for traditional summary judgment bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017); *see* Tex. R. Civ. P. 166a(c). When a plaintiff moves for summary judgment, it must conclusively establish each element of its claim, *Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021), and the nonmovant has no burden to respond to a motion for summary judgment unless the movant first conclusively establishes its claim, *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). Similarly, a defendant moving for summary judgment must conclusively negate at least one element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

### *Adcock's motion for partial summary judgment*

In his first issue, Adcock argues that the trial court erred in denying his motion for partial summary judgment, in which he contended that he was entitled to summary judgment on his trespass claim because the evidence he attached to his motion conclusively established all

4

essential elements of that claim and Cal-Maine could not produce any evidence raising a genuine issue of material fact. He also contends that the trial court improperly excluded his summary-judgment evidence. Cal-Maine objected to each of Adcock's exhibits: (1) to Adcock's affidavit, in which he averred that he "owns" the subject property and that Cal-Maine's construction of the curb "has caused" the runoff to enter his property, because those statements are conclusory; (2) to the photograph of the curb abutted with water because it provides no context for the photograph such as when it was taken or by whom and does not identify the respective properties; and (3) to the Google Maps photograph because it is irrelevant and non-probative as to causation.

The elements of trespass are (1) entry (2) onto the real property of another (3) without the property owner's consent or authorization. *Environmental Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419, 424 (Tex. 2015); *see Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property."). The plaintiff in a trespass action may establish the second element by proving either that he is the owner of the property at issue or that he has a lawful right to possession of the property. *Lyle v. Midway Solar, LLC*, 618 S.W.3d 857, 875 (Tex. App.—El Paso 2020, pet. denied).

We agree with Cal-Maine that the trial court properly excluded the portion of Adcock's affidavit in which he averred that he "owns" the subject property because such statement is conclusory by not providing the specific factual bases on which the conclusion was drawn. *See Spears v. Falcon Pointe Cmty. Homeowners' Ass'n*, No. 03-16-00825-CV, 2017 WL 4766652, at *4 (Tex. App.—Austin Oct. 17, 2017, no pet.) (mem. op.) (stating that conclusory

statement in affidavit that does not set forth admissible facts supporting conclusion drawn is not competent summary-judgment evidence); *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 50 (Tex. App.—San Antonio 2005, no pet.) (acknowledging that conclusory affidavits are not competent summary-judgment evidence, do not raise fact issues, and fail to provide underlying facts to support conclusion). Generally, a bare assertion that a party "owns" property is conclusory and incompetent and thus insufficient to conclusively establish ownership. *See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 527–28 & n.4 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Geiselman v. Cramer Fin. Grp., Inc.*, 965 S.W.2d 532, 537 (Tex. App.—Houston [14th Dist.] 1997, no writ). Adcock produced no other evidence to support the second element of trespass that he owns or has a lawful right to possess the property.[3] Accordingly, he did not conclusively establish this element of trespass, and the trial court did not err in denying his motion for partial summary judgment. We overrule Adcock's first issue.[4]

***Cal-Maine's motion for summary judgment***

In his second issue, Adcock contends that the trial court erred in granting Cal-Maine's motion for summary judgment, in which it asserted that it was entitled to summary judgment on Adcock's nuisance and trespass claims on two grounds: (1) Section 251.004(a) of the Texas Agriculture Code and (2) the applicable statute of limitations for each cause of action. *See* Tex. Agric. Code § 251.004(a) ("Nuisance or Other Actions"); Tex. Civ. Prac. & Rem. Code

---

[3] Although on appeal Adcock cites portions of his deposition that he argues support his "lawful right to possess" the property, such evidence was not before the trial court when it ruled on his motion but was first presented to the trial court about a year later when Cal-Maine attached the deposition to its motion for summary judgment.

[4] Because of this holding, we need not consider Adcock's challenges to the trial court's exclusion of his other evidence.

6

§ 16.003(a) ("Two-Year Limitations Period").  Adcock challenges each ground on appeal, and we begin with the first because it is dispositive.

Texas Agriculture Code Section 251.004, part of the Right to Farm Act, operates as a statute of repose.  *See Holubec v. Brandenberger*, 111 S.W.3d 32, 38 (Tex. 2003).  The applicable version of the statute provides,

> No nuisance action may be brought against an agricultural operation that has lawfully been in operation for one year or more prior to the date on which the action is brought, if the conditions or circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation.  This subsection does not restrict or impede the authority of this state to protect the public health, safety, and welfare or the authority of a municipality to enforce state law.

Act of May 30, 1981, 67th Leg., R.S., ch. 693, § 21, sec. 251.004(a), 1981 Tex. Gen. Laws 2589, 2596 (amended 2023) (current version at Tex. Agric. Code § 251.004) (Former Section 251.004(a)).[5]

The supreme court has construed this statute of repose "to bar a nuisance action against a lawful agricultural operation one year after the commencement of the conditions or circumstances providing the basis for that action." *Holubec*, 111 S.W.3d at 38.  "Thus, under the Act, it does not matter when the complaining party discovers the conditions or circumstances constituting the basis for the nuisance action." *Id.*  "Instead, the relevant inquiry is whether the conditions or circumstances constituting the basis for the nuisance action have existed for more than a year." *Id.*; *see Cal-Co Grain Co. v. Whatley*, No. 13-05-120-CV, 2006 WL 2439973, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2006, pet. denied) (mem. op.) ("The defense in Section 251.004(a) is intended to bar a nuisance action against a lawful agricultural operation

---

[5] The 2023 amendments do not apply to this dispute, and thus our citations to this section are to the statute as it appeared before those amendments.

one year after the commencement of the conditions or circumstances providing the basis for that action."). The existence of a genuine issue of material fact on that issue—whether the conditions or circumstances constituting the basis for the nuisance action have existed for more than a year—thus precludes summary judgment. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co.*, 520 S.W.3d at 45; *see also Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 821 (Tex. App.—El Paso 2010, no pet.) (noting that statutes of repose operate as affirmative defenses on which movant has burden to conclusively prove each element). One of our sister courts has applied Section 251.004 to trespass actions based on the same alleged conditions and circumstances creating a nuisance. *See Ehler*, 319 S.W.3d at 823–24; *see also* Tex. Agric. Code § 251.004(a) (current version of statute providing, "No nuisance action *or other action to restrain an agricultural operation* may be brought against an agricultural operation . . . ." (emphasis added)). We likewise conclude that Section 251.004 applies to trespass actions based on the same alleged conditions and circumstances creating a nuisance.

Adcock argues that Cal-Maine did not conclusively establish its entitlement to this statute of repose, specifically the elements that (a) Cal-Maine had "lawfully been in operation" for more than a year before he filed his lawsuit and (b) the conditions about which he is complaining remained "substantially unchanged" during that time. Viewing the evidence in the light most favorable to Adcock and drawing all reasonable inferences in his favor, *see Energen Res. Corp.*, 642 S.W.3d at 509, we agree with him as to the latter element and thus need not consider the first.

In a declaration attached to his response to Cal-Maine's motion for summary judgment, Adcock averred,

8

In or about 2018, [Cal-Maine] started causing water to run onto my property whenever [Cal-Maine] conducted certain activities on its property. The water would enter my property at the northeast corner of my property and would cause my yard to be flooded and my grass to die.

In or about January 2019, Defendant erected a curb on its property, which diverted the water and other substances and caused them to enter onto my property at a different location than they did in 2018. The water now entered closer to the northwest corner rather than the northeast corner that it did before. The new entry point of the water has caused different damage to my property, including structural damage to my home. I personally saw the erection of the curb and the flow of water from Defendant's property to mine.[6]

Adcock similarly testified in his deposition that the earliest "any liquids" were entering his property from Cal-Maine's operation was sometime in "mid to early" 2018, which is about the time that his "lush green yard" became a "desolate, weed-infested swamp." According to Adcock, that timeframe is when Cal-Maine "started doing different things" with respect to its mill operations, specifically in how, when, and where the mill "wash[ed] stuff off" its hopper equipment. He averred that in 2018 Cal-Maine began to "wash[] the plant down . . . around these hoppers, and they would do it all day long . . . [and] that water would run constant." The runoff became "worse" in 2019 or late 2018 when Cal-Maine installed the curb at issue, which changed the location at which the runoff came onto his property and flooded it. The "only problems" Adcock had with Cal-Maine's operations before mid-2018 were the odors and "some of the dust," which was "minor" compared to after that point when it worsened.

While in his testimony Adcock consistently admitted that the runoff problems began in 2018, he did not identify any specific date within that year when the allegedly actionable conduct or intrusions first occurred, except to say "mid to early" 2018. Without a more specific date, we cannot determine as a matter of law whether Adcock's original petition

---

[6] This declaration differs from the affidavit that Adcock attached to his motion for partial summary judgment.

(filed April 29, 2019) was filed within a year of the start of the complained-of conditions or circumstances.[7] Moreover, Cal-Maine did not identify or produce any evidence to prove that the alleged runoff first occurred more than a year before Adcock filed suit. Accordingly, Cal-Maine did not conclusively establish its right to summary judgment on its affirmative defense of the statute of repose provided by Section 251.004(a) as to either Adcock's nuisance or trespass claims. We sustain Adcock's second issue.[8]

**CONCLUSION**

We affirm the trial court's denial of Adcock's motion for partial summary judgment. We reverse the trial court's summary judgment in favor of Cal-Maine and remand this cause for further proceedings consistent with this opinion.

---

[7] Further, to the extent that Cal-Maine's alleged construction of the curb constitutes distinct actionable conduct—a determination we need not make—it is undisputed that Adcock's first amended petition, which first mentioned the curb, was filed within a few months of the curb's alleged construction and thus is not barred by the one-year statute of repose. Neither does the statute of repose bar his claims based on the alleged loud truck noises, which Adcock alleges also began around the time the curb was constructed, and Cal-Maine identifies no evidence conclusively establishing an earlier start date for the noises.

[8] Because of our determination regarding the statute of repose, we need not address Adcock's contention that Cal-Maine did not conclusively establish its two-year statute of limitations affirmative defense on his nuisance and trespass claims pertaining to the water intrusion. *See* Tex. R. App. P. 47.1, 47.4. However, we note that the only relevant record evidence supports a finding that the runoff began sometime in 2018 and worsened in 2019, precluding the running of two years between even the first day of 2018 and the filing of Adcock's lawsuit.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Theofanis

Affirmed in Part; Reversed and Remanded in Part

Filed:  January 19, 2024

11