

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-21-00244-CV
_____

ANTONY MCGREGOR DEY, APPELLANT

V.

SEILEVEL PARTNERS, LP, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-21-002722; Honorable Amy Clark Meachum, Presiding

March 23, 2022

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Antony McGregor Dey, was employed by Appellee, Seilevel Partners, LP and was terminated on January 27, 2021. At the time of his termination, Dey accepted a severance package from Seilevel in exchange for certain post-employment promises contained in an *Agreement and General Release.* After his termination, Dey engaged in conduct in violation of that agreement which resulted in the underlying suit

being filed by Seilevel for breach of contract, breach of fiduciary duty, and violations of the Texas Uniform Trade Secrets Act.[1] The same day suit was filed, Dey and Seilevel approved entry of an *Agreed Temporary Restraining Order.* Critical to this appeal, the temporary restraining order enjoined Dey from "accessing, using, or disclosing any Seilevel Information for any purpose," and it further enjoined him from "directly or indirectly soliciting or contacting [seven named] Seilevel customers . . . ." Following a period of discovery, Seilevel filed its amended petition seeking temporary injunctive relief. After notice and hearing, the trial court granted a temporary injunction enjoining Dey from continuing to use trade secrets as well as confidential and proprietary information. The temporary injunction resulted in this accelerated appeal.[2] Dey presents nine issues challenging the trial court's *Order Granting Temporary Injunction* as follows:

1. The trial court abused its discretion in ordering direct access to Dey's personal laptop for forensic examination.

2. Does the Texas Supreme Court's decision in *In re Weekley*, 295 S.W.3d 309, 321 (Tex. 2009),[3] which limited direct access to a litigant's electronic devices, apply to a direct access order in a temporary injunction?

3. Even though *In re Weekley* did not address injunctions, should the same principles apply to injunctions?

4. Did the trial court abuse its discretion in entering a temporary injunction ordering direct access to Dey's personal laptop?

---

[1] TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001 - .008. The Legislature enacted TUTSA in 2013 to protect misappropriation of trade secrets. Section 134A.006(a) provides in part that "a court shall preserve the secrecy of an alleged trade secret by reasonable means. There is a presumption in favor of granting protective orders to preserve the secrecy of trade secrets." § 134A.006(a).

[2] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] The Supreme Court set forth the proper procedure for searching another party's electronic storage devices under appropriate discovery rules. *In re Weekley*, 295 S.W.3d at 322.

5. Does the temporary injunction violate the specificity requirements of Rule 683 of the Texas Rules of Civil Procedure?

6. Did the trial court abuse its discretion in issuing a temporary injunction that was ambiguous on the non-solicitation portion of the injunction?

7. Did the trial court abuse its discretion in enjoining Dey's use of Seilevel's confidential information where there was no evidence of any imminent threat of his using such information?

8. Did the trial court abuse its discretion by including a restriction on solicitation of customers when there was no evidence of any imminent threat of Dey causing Seilevel to lose any active customers?

9. Did the trial court abuse its discretion in issuing the temporary injunction when Seilevel failed to meet the requirements of likelihood of success on the merits and irreparable injury?

Distilled to their essence, Dey's issues are a complaint that the trial court abused its discretion in issuing its *Order Granting Temporary Injunction*. We modify the temporary injunction and affirm the order of injunction as modified.

### BACKGROUND

Seilevel is in the business of providing ecommerce and marketing information to business customers, which includes Fortune 1000 companies. In June 2018, Dey was hired as Seilevel's Ecommerce Practice Manager. His employment required an agreement to the conditions of an *Employee Innovation Assignment, Nondisclosure, Noncompete, and Nonsolicitation Agreement.*

Dey was terminated on January 27, 2021, and the parties entered into an *Agreement and General Release*, a severance agreement. Dey's post-employment obligations included a provision that he "ha[d] not divulged any proprietary or confidential information of Seilevel and [would] continue to maintain the confidentiality of such information" (Paragraph 5) and his affirmation that he "ha[d] returned all of Seilevel's

3

property, documents, and/or any confidential information in [his] possession or control, including audio pen and recordings, laptop, and other material issued to [him]" (Paragraph 6). Regarding the laptop, a Macbook Pro, Seilevel allowed Dey to keep it as an act of good will on the condition and belief that he would remove all of Seilevel's information.[4]

After Dey's termination, Seilevel discovered it was unable to gain access to certain accounts because Dey had created them under a personal Google account and not under Seilevel's workspace. Lisa Hill, vice president of technology strategy and Dey's former direct manager, contacted Dey to obtain the password which he provided but it was incorrect. After he provided the correct password, she was still unable to gain access because Dey had set up a two-factor authentication. Dey met with Hill on March 3, 2021, to transfer the two-factor authentication to her cell phone; however, that also failed to provide Hill with access because the two-factor authentication had been transferred to an application that only Dey could access. After months of back-and-forth and Hill being denied access, she finally gained control of the accounts on May 27. In doing so, she discovered that Dey had been accessing Seilevel's confidential information, downloading files, and contacting Seilevel customers, all in violation of his severance agreement.[5] She described his activities as "nefarious."

---

[4] During discovery, Dey claimed he had wiped the laptop in March and sold it to a random individual in a van through Facebook Marketplace, but at his deposition in July, he testified that he had sold a different laptop and had given the Macbook Pro to his wife to use.

[5] Contrary to Hill's testimony, Dey denied accessing confidential information. He claimed he was merely denying authorization for attempts to log in because he was unaware of who was trying to access the account.

4

Seilevel filed suit against Dey on June 11, 2021, and that same day the trial court granted an agreed temporary restraining order. Several months later, on August 24, 2021, the trial court held a hearing on the request for a temporary injunction. The four who testified were Hill, Joy Beatty, vice president of operations, Matt Danner, an expert in digital forensics, and Dey.

In addition to Hill's testimony regarding regaining access to Seilevel's accounts, Beatty testified on the harm caused to Seilevel by Dey's conduct (to be discussed below). Danner testified he was consulted by Seilevel to review its Google account and a password storing software program to isolate a particular user's access for the period beginning in January through May 2021. His examination identified an IP address that was used exclusively by Dey during the relevant timeframe. Danner, however, could not determine with certainty if Dey's log-ins were simply rejections of Hill's attempts to log into the account. He determined that two bulk downloads (eleven items) occurred shortly after midnight on February 1, 2021.[6]

Danner further testified that the best way to determine the specifics of the bulk downloads would be to examine the device responsible for them. He was not asked to examine a device because Seilevel did not have access to it. He explained that if Dey wiped the particular device, "it would be extremely difficult and probably impossible" to determine which individual documents were downloaded.

---

[6] Dey admitted to downloading Seilevel documents in February 2021 but disputed doing so in May 2021. The expert did not make a finding that Dey downloaded (as opposed to merely accessing) any Seilevel documents after March 3.

Danner also examined a marketing services account. He discovered the same log-in records as the Google account occurred on February 20, 2021. He determined the log-ins were associated with an Apple Macintosh computer which could have been the Macbook Pro Dey kept. The expert's examination indicated that Dey continued to access Seilevel documents after he was terminated. During cross-examination, Danner's testimony showed that it was possible for Dey to be logged into his devices after his termination without actually accessing any of Seilevel's documents.

The final witness to testify at the hearing was Dey. He did not deny that he downloaded and provided Texas Supplements, a Seilevel customer, its website design which he had created in 2019. He also provided Texas Supplements with other confidential information on Seilevel's resource costs for one of its contractors which was less than the amount actually charged to the customer (known in the business as an upcharge). According to Beatty, the amount of the upcharge and its cost margins are trade secrets.

Dey testified he purchased a new laptop in March 2021 and completed a factory reset of the Macbook Pro he received from Seilevel so that his wife could use it as her business computer. He admitted that even after he purchased a new laptop, he moved fifteen Seilevel documents to that device which he claimed have since been returned. He conceded that his conduct in doing so was "very purposeful" because he was building a portfolio to find employment. Specifically, he sought to work for Texas Supplements and attempted to discuss it with Seilevel's CEO, who did not respond to his request.

6

Dey admitted that after his termination he contacted several other Seilevel customers. In his deposition, he claimed he did so in anticipation of a temporary restraining order which would have prevented him from otherwise contacting Seilevel customers. He also testified he "firmly believed [he] did not have a noncompete" because he felt certain he had negotiated out of it when he was first employed. However, when asked if he "agreed to a version of the noncompete agreement that had an altered Paragraph 12," he answered, "[y]es."[7] He did claim, however that the online signature was not provided by him.

After considering the testimony and evidence presented at the hearing, the trial court ruled it was granting Seilevel a temporary injunction. The trial court's ruling was memorialized in its *Order Granting Temporary Injunction*. That order recites that it is "highly probable that [Dey] will continue to disclose or use Seilevel's confidential and proprietary information and trade secrets while working for current or former Seilevel customers . . . ." The order further recites that Seilevel "has shown a probable right to relief on its claims for breach of fiduciary duty, violations of the Texas Uniform Trade Secrets Act, and breach of contract." The order continues that absent an injunction, Seilevel will suffer irreparable injury that cannot be measured in money damages. Finally, the order grants three forms of relief: (1) it imposes a restriction on Dey's access, use, or disclosure of confidential or proprietary information; (2) it restricts Dey from using any confidential information to solicit, contact, or communicate with seven named customers of Seilevel, and (3) it requires that, within ten days, Dey deliver the Macbook

---

[7] Paragraph 12 of Seilevel's *Employee Innovation Assignment*, *Nondisclosure*, *Noncompete, and Nonsolicitation Agreement* is a covenant not to compete for one year following termination.

Pro laptop he received from Seilevel to a forensic examiner, to be mutually agreed on by the parties, for the purpose of conducting certain forensic analysis.

More specifically, the relief granted in the *Order Granting Temporary Injunction* recites as follows:

1. Dey, directly or indirectly, individually or as a member of any business organization, along with his agents, servants, consultants, contractors, employees, and any person or entity in concert or participation with him, is enjoined from accessing, using, or disclosing any of Seilevel's confidential or proprietary information or any information Dey obtained from or created for Seilevel for any purpose; and

2. Dey, directly or indirectly, individually or as a member of any business organization, along with his agents, servants, consultants, contractors, employees, and any person or entity in concert or participation with him, is enjoined from directly or indirectly using any Seilevel confidential information to solicit or contacting or communicating with current Seilevel customers Texas Supplements, Beacon Roofing, Fluitek, Herbalogic, Dell, Streakwave, or JL Marine regarding marketing or ecommerce.

   These restrictions are reasonably and narrowly tailored to protect Seilevel's confidential and proprietary business information and intellectual property and the related goodwill.

   IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, within 10 days of entry of this Temporary Injunction, Dey must produce the Macbook Pro laptop Seilevel provided Dey to a forensic examiner the parties select. The forensic examiner shall review the laptop in accordance with a forensic protocol agreed to by the parties or ordered by the Court, which shall include determining (1) if the laptop produced by Dey is the laptop Seilevel provided him, (2) if and when the laptop was wiped by Dey, and (3) if any Silevel confidential and proprietary business information and intellectual property remains on the laptop.

The temporary injunction was signed on September 13, 2021. Dey filed his notice of appeal the next day, before the parties ever attempted to agree to a forensic examiner or the necessary protocols, as contemplated by the temporary injunction order.

8

**APPLICABLE LAW**

Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam). The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. While preservation of the status quo may be the purpose of a temporary injunction, it cannot serve as the basis for its issuance. *Crestview, Ltd. v. Foremost Ins. Co.*, 621 S.W.2d 816, 827-28 (Tex. App.—Austin 1981, writ ref'd n.r.e.). To obtain a temporary injunction, an applicant is not required to establish that it will prevail upon a final trial on the merits, but it must plead and prove (1) a cause of action against the opposing party, (2) probable right to the relief sought, and (3) probable imminent and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Taylor Hous. Auth. v. Shorts*, 549 S.W.3d 865, 877-78 (Tex. App.—Austin 2018, no pet.).

Rule 683 of the Texas Rules of Civil Procedure provides that an order granting an injunction shall set forth the reasons for its issuance. The terms of the injunction "shall be specific; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorney, and upon those persons in the active concert or participation with them who receive actual notice of the order by personal service or otherwise." TEX. R. CIV. P. 683; *DHJB Dev., LLC v. Graham*, No. 03-18-00343-CV, 2018 Tex. App. LEXIS 9295, at *6 (Tex. App.—Austin 2018, pet. dism'd) (mem. op.).

The requirements of Rule 683 are mandatory. *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). An order that does not comply with the requirements of Rule 683 "is subject to being declared void and dissolved." *Helix Energy Solutions Grp., Inc. v. Howard*, 452 S.W.3d 40, 44 (Tex. App.—Houston [14th Dist.] Nov 13, 2014, no pet.) (quoting *InterFirst Bank San Felipe*, 715 S.W.2d at 641).

STANDARD OF REVIEW

The decision whether to grant or deny a request for a temporary injunction is committed to the sound discretion of the trial court. *Abbott v. Anti-Defamation League Austin*, *Southwest*, *& Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (citing *Walling*, 863 S.W.2d at 58). When an appellate court reviews the granting of a temporary injunction, it may reverse the trial court's decision only when that court has clearly abused its discretion. *Crestview, Ltd.*, 621 S.W.2d at 828. A trial court does not abuse its discretion when its decision is founded on the resolution of a fundamental fact issue based on conflicting evidence. *See General Tire*, *Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). *See also Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (noting that "to find an abuse of discretion [when factual matters are in dispute], the reviewing court must conclude the facts and circumstances of the case extinguish any discretion in the matter").

Appellate review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting the application for a temporary injunction, and a reviewing court does not address the merits of the underlying case. *Brooks v. Expo Chem. Co.*, 576 S.W.2d 369, 370 (Tex. 1979) (stating that because "the effect of a premature review of the merits is to deny the opposing party the right to trial by a jury . . .

10

it will not be assumed that the evidence taken at a preliminary hearing on temporary injunction will be the same as the evidence developed at a trial on the merits"). In making this determination, a reviewing court may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204.

### ANALYSIS

#### IRREPARABLE AND IMMINENT HARM

By his issues, Dey does not challenge whether Seilevel plead a cause of action against him or Seilevel's probable right of recovery. Rather, he vehemently challenges whether there is sufficient evidence to show irreparable and imminent injury.

Initially, we note that when a party possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed. *IAC*, *Ltd. v. Bell Helicopter Textron*, *Inc.*, 160 S.W.3d 191, 201 (Tex. App.—Fort Worth 2005, no pet.). It is undisputed that information accessed by Dey contained Seilevel's trade secrets. In March 2021, presumably from the confidential information shared by Dey, Texas Supplements, a Seilevel customer, informed Seilevel that it was cutting its budget for marketing services by one-half after Dey had offered to train its employees. Several months later, on May 26, 2021, Texas Supplements terminated its ecommerce and marketing services with Seilevel and hired Dey as its Chief Marketing Officer beginning June 1. However, Dey was terminated that same day without explanation.

Joy Beatty, Seilevel's vice president of operations, testified that after Dey's termination from Seilevel, he accessed customer prospect lists, cost structures, internal

11

job descriptions, and its business operating model—all confidential information. She testified that Dey's sharing of Seilevel's cost structure with its customers cast it in an unfavorable light and was "one of the more harmful pieces" shared with customers. Dey's access to internal job descriptions allowed him to demonstrate to customers that he could recreate a team to deliver services without Seilevel. In Beatty's own words, Dey's conduct made Seilevel "look bad." According to Beatty, Texas Supplements produced $2 million of revenue annually and Dey's sharing of confidential information resulted in Texas Supplements eventually terminating all of Seilevel's services.

During Beatty's cross-examination at the hearing on the temporary injunction, Dey's counsel suggested that Dey did not pose a threat of imminent harm. Although Beatty agreed there was no imminent threat regarding businesses Seilevel had already lost or businesses which had not threatened to terminate Seilevel's services, Seilevel was "still dealing with the harm caused prior to the [temporary restraining order]." She testified that Dey's conduct had damaged Seilevel's goodwill and relationships with its customers.

Seilevel's counsel asked Beatty about the potential harm of Dey's sharing confidential information. She answered that if he provided it to competitors, they could undercut pricing because the work, strategy, and analysis had already been done by Seilevel. She explained that she could not fully calculate the harm caused by Dey because she did not know how his conduct would impact the future given that Dey did not believe he had done anything wrong in accessing confidential information after his termination. *See Taylor Hous. Auth.*, 549 S.W.3d at 878 ("An 'irreparable' injury refers to one that is incapable of being compensated adequately in damages or for which

12

damages cannot be measured by any certain pecuniary standard."). Beatty further testified that the temporary restraining order notwithstanding, she could not predict the future impact of Dey's conduct.

Dey testified that he wiped the Macbook Pro before suit was filed and no longer had access to Seilevel's confidential information. He also testified that because Texas Supplements and another customer had terminated their business with Seilevel prior to the hearing on the temporary injunction, Seilevel could not prove he posed an imminent threat of harm to its business relationships. The trial court, however, was free to disbelieve Dey's testimony given that he had previously said that he sold the Macbook Pro to an individual in a van only to later claim he gave it to his wife. Beatty's testimony provided sufficient evidence from which the trial court could conclude that Dey's access to confidential information and his use of that information caused irreparable and imminent harm to Seilevel.

Dey may have also inadvertently provided evidence that his conduct caused injury to Seilevel. During questioning from his counsel on whether he anticipated litigation due to his conduct, Dey expressed his belief that a lawsuit would ruin Seilevel's reputation with Texas Supplements. He also insinuated that arrogance on the part of Seilevel's CEO, with Dey's potentially working for Texas Supplements, caused Texas Supplements to terminate Seilevel's services. Based on the testimony, the trial court did not have to believe that Dey no longer had access to the information contained in the files he admitted to downloading and the court could have made a reasonable inference that such information had the potential to cause irreparable and imminent harm to Seilevel.

13

**NONDISCLOSURE AND NONSOLICITATION RESTRICTIONS AND RULE 683**

Dey asserts the nondisclosure restriction's use of the terms "confidential or proprietary information," which are not defined, fails to conform to the specificity requirements of Rule 683. Similarly, he maintains that the term "Seilevel confidential information" in the nonsolicitation restriction is too vague, undefined, and ambiguous to be enforceable and, therefore, violates Rule 683. We disagree.

An injunction must be as definite, clear, and precise as possible, and when practicable it should inform the defendant of the acts he is restrained from doing. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956). But the injunction must be stated in terms which are sufficiently broad enough to prevent repetition of the evil sought to be stopped. *Id.* In that regard, an injunction need not specifically identify every act that might constitute the prohibited action. *Id.*

Dey complains of the language "confidential and proprietary information" and "Seilevel confidential information" as not being sufficiently specific to comply with the requirements of Rule 683. We disagree.

The language in the temporary injunction is almost verbatim from the language in the temporary restraining order to which Dey agreed. He did not complain in the trial court that the temporary restraining order was vague or ambiguous leaving him uncertain of what conduct was being prohibited. Neither did he complain in the trial court that certain terms in the temporary injunction were vague or ambiguous. His failure to complain in the trial court results in procedural default of his contentions on appeal. TEX. R. APP. P. 33.1(a). Even so, during his sworn testimony, he admitted to accessing and

downloading confidential and proprietary information without any clarification needed as to what type of information Seilevel considered confidential or proprietary. As such, we conclude the language of which he complains is neither vague nor ambiguous.

### DIRECT ACCESS ORDER

Dey contends that Seilevel failed to plead for direct access to the Macbook Pro in its original request for a temporary injunction or in its amended pleading. He asserts the untimely request for direct access during the hearing was extremely intrusive and caused him unfair surprise and prejudice.

An injunction that exceeds a pleading is an abuse of discretion. *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 391 (Tex. App.—Dallas 2009, no pet.). However, in the absence of special exceptions, pleadings seeking injunctive relief are construed liberally in favor of the applicant. *Henry v. Smith*, 226 S.W.3d 226, 243 (Tex. App.—Fort Worth 2021, pet. filed) (citing *Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 139 n.19 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). Seilevel pleaded for Dey to "turn over all of Seilevel's materials." Dey did not specially except to the absence of an allegation to turn over the Macbook Pro. It is not an unreasonable inference that some of the information on the Macbook Pro, despite Dey being allowed to keep it, could have been considered Seilevel's "materials" despite Dey's assertion that he wiped it before suit was filed.

Assuming that Seilevel's live pleading did not plead for direct access to the Macbook Pro, the issue was tried by consent. The rule of trial by consent is limited to those instances where the parties clearly tried an unpleaded issue by consent. *White v.*

*Sullins*, 917 S.W.2d 158, 160 (Tex. App.—Beaumont 1996, writ denied); TEX. R. CIV. P. 67. Consent may be found only when evidence concerning an unpleaded issue is developed under circumstances indicating both parties understood the issue was being contested. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009).

During Danner's expert testimony concerning his examination of Dey's unauthorized downloads, he testified "[t]he best way to determine [the actual downloads] would be to look at the device that was – was responsible for the download." When questioned on whether he had been asked to examine the Macbook Pro, he explained, "I just don't think we have the device or access to it." Dey did not object to Danner's testimony on the necessity of accessing the Macbook Pro for examination.

The temporary injunction anticipates that the parties will agree on a forensic examiner. It also contemplates that Dey will turn over the Macbook Pro for examination "in accordance with a forensic protocol agreed to by the parties or ordered by the Court . . . ." Essentially, the direct access order is nothing more than an order contemplating the subsequent entry of a clarifying order and preserving the status quo pending entry of that order. It is limited in scope to a short period of time. Thus, the issue of *direct access* to the Macbook Pro is not ripe for review by this court obviating a discussion on whether the procedure for a forensic examination of digital devices set forth in *In re Weekley* should apply to a temporary injunction.

The trial court's findings in the temporary injunction are not merely conclusory, however. Given the nature of trade secrets, the trial court found that without the injunction, Seilevel could potentially suffer imminent injury not measurable in money

16

damages from the information Dey admitted that he had already accessed and downloaded. In exercising its sound discretion, the trial court was free to disbelieve that Dey had completely wiped the Macbook Pro and returned all the confidential files and information he admitted he copied onto his new laptop. The record provides a basis for the trial court's order granting Seilevel's request for a temporary injunction and that decision is not "so arbitrary as to exceed the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 211. Having found the trial court did not abuse its discretion, Dey's issues are overruled.

### MODIFICATION OF TEMPORARY INJUNCTION

Certain provisions of the *Order Granting Temporary Injunction* are no longer workable due to the passage of time. Therefore, in order to maintain the status quo, and to facilitate the entry of further orders as contemplated, the "direct access" provision of the *Order Granting Temporary Injunction* is modified as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, on or before the March 28, 2022, Dey must produce the Macbook Pro laptop Seilevel provided Dey to Dey's legal counsel for safe-keeping until such time as it is released to a forensic examiner in accordance with the orders of this court. During this period of safe-keeping, no one shall have access to the contents of the laptop for any purposes. The parties are ordered to confer and agree upon a forensic examiner. Should the parties be unable to agree upon a forensic examiner by April 15, 2022, that matter shall be presented to the trial court for determination. The forensic examiner shall review the laptop in accordance with a forensic protocol agreed to by the parties, which shall include determining (1) if the laptop produced by Dey is the laptop Seilevel provided him, (2) if and when the laptop was wiped by Dey, and (3) if any Seilevel confidential and proprietary business information and intellectual property remains on the laptop. Should the parties be unable to agree upon a forensic protocol by April 15, 2022, that matter shall be presented to the trial court for determination.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Seilevel shall post bond in the amount of $10,000, by March 28, 2022, to serve as sufficient bond for this Order.

**CONCLUSION**

As modified, the trial court's *Order Granting Temporary Injunction* is affirmed.

Per Curiam